## IN THE UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>DELTA PETROLEUM CORPORATION, *et al.*,<br><br>         Debtors. | Chapter 11<br><br>Case No. 11-14006 (KJC)<br><br>(Jointly Administered)<br><br>Hearing Date:  May 8, 2012 at 3:00 p.m. (ET)<br><br>Objection Deadline:  May 7, 2012 at 12:00 Noon (ET) |

### GEORGE DARWIN'S OBJECTION TO DEBTORS' MOTION
### FOR AN ORDER TO EXTENDING THE AUTOMATIC STAY

George Darwin ("Darwin"), proposed lead plaintiff in a putative securities class action lawsuit filed on April 18, 2012 in the United States District Court for the District of Colorado (the "District Court"), entitled *George Darwin, Individually and on Behalf of All Others Similarly Situated v. Daniel J. Talor, et al.*, Civ. Act. No. 12-cv-01038-CMA-CBS (the "Securities Litigation"), on behalf of all persons (the "Putative Class") who purchased or otherwise acquired the publicly traded securities of Delta[1] (also referred to herein as the "Debtor") between November 9, 2010 and November 9, 2011, inclusive (the "Class Period"), for damages arising from violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder, by certain of Delta's current officers or directors (the "Non-Debtor Defendants"),[2] respectfully submits this objection (the "Objection") to the Motion of Delta Petroleum Corporation for Entry of an Order Extending the Automatic Stay (the "Motion"), and respectfully states the following:

---

[1]    Capitalized terms shall have the meanings ascribed to them in the Motion unless otherwise defined herein.

[2]    The Non-Debtor Defendants are Daniel J. Taylor, Carl E. Lakey and Kevin K. Nanke.

## PRELIMINARY STATEMENT

1.      Although filed as a motion, the Debtor actually seeks the extraordinary remedy of enjoining the Securities Litigation brought by a non-debtor, from proceeding against the Non-Debtor Defendants.  As a basis for the extraordinary relief requested in the Motion, Delta asserts, in the most conclusory fashion and with no evidentiary support, that (i) the Securities Class Action seeks property of Delta's estate by virtue of Delta's purported indemnification obligation; (ii) the risk of collateral estoppel, vicarious liability and evidentiary prejudice; and (iii) the Non-Debtor Defendants will be distracted from focusing their efforts on Delta's reorganization if compelled to defend the Securities Litigation.

2.      These arguments have no merit and therefore, while the Motion fundamentally fails on an evidentiary and substantive basis, the Court need not even address the merits of the Motion, because the Motion is deficient on several threshold grounds.

3.      The Motion to extend the automatic stay to actions between non-debtors is a request for a preliminary injunction.  Such injunctive relief may only be pursued by way of an adversary proceeding. Fed. R. Bankr. P. 7001(7); *In re Bora Bora, Inc.*, 424 B.R. 17, 24 (Bankr. D. P.R. 2010).  Therefore, the Court should deny the Motion because it is not the appropriate means to obtain injunctive relief.

4.      Additionally, it is questionable whether this Court even has subject matter jurisdiction in the first instance to enjoin the Securities Litigation.  *See Gillman v. Continental Airlines (In re Continental Airlines)*, 203 F.3d 203, 214 n. 12 (3d cir. 2000) (noting that jurisdiction to enjoin third-party actions against non-debtors cannot be presumed).  Personal jurisdiction is also at issue because George Darwin was not served with the Motion and has not authorized his counsel in the Securities Litigation to accept service of the Motion.  Darwin has not entered an appearance in the Chapter 11 proceeding and has not even filed a proof of claim

against the Debtor.  Darwin is therefore a stranger to this Chapter 11 case.  Without proper subject matter or personal jurisdiction, the Motion cannot and should not proceed.

5.      In the event the Court does consider the merits of the Motion, the relief requested must be denied on evidentiary and substantive grounds.  Only in extraordinary circumstances may a court enjoin independent non-derivative actions against non-debtor parties, including officers, directors, shareholders, and employees of a debtor, under Bankruptcy Code §105 and/or by extending the reach of Bankruptcy Code §362.  Contrary to the Debtor's flimsy argument, the mere status of a non-debtor as a current or former director or officer is insufficient justification for staying third-party litigation against non-debtor parties.  (Indeed, numerous debtors in complex Chapter 11 cases have undergone reorganizations and liquidations while non-debtor defendants litigated securities fraud claims in other courts.  *See* ¶65, *infra*.)

6.      To sustain the heavy burden required to essentially shut down the Securities Litigation, a debtor must demonstrate clearly and convincingly through evidence that the failure to enjoin the action would imminently and seriously adversely affect or impact the bankruptcy estate or property of the bankruptcy estate.  The Debtor, through only conclusory allegations and hyperbole, cannot satisfy this heavy burden.  The Motion presents absolutely no evidence to support the extraordinary relief requested.  The Debtor's sole pleading is the Motion which contains counsel's self-serving statements and nothing more.  There is no evidence in the form of supporting declarations or otherwise.  There is no evidence that continuation of the Securities Litigation will cause the Debtor any irreparable harm (*i.e.*, will impair the Debtor's reorganization efforts), let alone imminent irreparable harm.  The Debtor does not identify any activity that is taking place or will take place in the near future that warrants the unique injunctive relief requested in the Motion.  As detailed below, Debtor's arguments are the reddest

of herrings and do not even provide an accurate portrayal of the relevant facts that can actually be discovered.

7.      With regard to the roles of the Non-Debtor Defendants in the Debtor's reorganization efforts (which looks more like a liquidation), the Debtor's self-serving statements in the Motion at ¶30 are so general and conclusory that they do not even approach the level of competent evidence necessary to satisfy the Debtor's burden.  Nor does the general description of their roles in paragraph 12 of the Motion satisfy any evidentiary burden.  Moreover, there is no evidence as to how the Securities Litigation, which is in its infancy and cannot even involve the Non-Debtor Defendants at all for many months, will interfere with whatever roles they are playing.  As a result, the Debtor fails to show that the continued prosecution of the Securities Litigation against the Non-Debtor Defendants, at least for the foreseeable future, will have any impact on the reorganization process, a fact that is fatal to the relief sought in the Motion. Indeed, the Debtor has employed a chief restructuring officer, who apparently will oversee the reorganization, as well as financial advisors who, it appears, will have primary roles in the Chapter 11 process, thereby leaving little from which the Non-Debtor Defendants will be distracted.

8.      The Securities Litigation was filed against the Non-Debtor Defendants based upon actions for which they are independently liable under the federal securities laws as direct participants.  Thus, contrary to the Debtor's bald assertion, the Securities Litigation is not "a deliberate and obvious attempt" to do an "end run" around the automatic stay.  As a practical matter, no proof of claim was filed prior to the bar date so there is no securities claim pending against the Debtor.  Even if relevant, had a proof of claim been filed by Darwin or the Putative Class, the Debtor's defrauded investors likely will receive no recovery against the Debtor

through this Chapter 11 proceeding by virtue of the subordination provisions of Bankruptcy Code §510(b).  Therefore, there is no current economic impact or exposure with respect to the Debtor as a result of the Securities Litigation.

9.    In addition, neither the existence of corporate bylaws regarding indemnification rights of directors and officers while acting in their corporate capacities, nor the fact that the Debtor may have indemnification obligations to the Non-Debtor Defendants, renders the Securities Litigation subject to a stay under Bankruptcy Code §362(a).  As more fully set forth below, the existence of contingent and unliquidated general unsecured indemnification claims by the Non-Debtor Defendants does not support the injunctive relief requested.  Such indemnification claims, even if viable, are also subject to subordination under Bankruptcy Code §510(b) and likely will have no economic impact on or significance in this case.

10.    Furthermore, it is well settled that where the proceeds of a Directors and Officers Liability Insurance Policy go directly to the officers and directors as direct insureds and not to a debtor, the proceeds are not property of the estate.  This does not change because the policy also provides subordinated indemnification coverage of Delta or, perhaps, "entity coverage" for securities claims.  As set forth *infra*, at ¶32, the D&O policy at issue here contains an order of payments provision which precludes the use of any of the insurance proceeds by the Debtor for indemnification reimbursement (assuming that the Debtor has made or makes any such payments) until the defense costs and liability of the Non-Debtor Defendants have been fully paid.  Thus, the provisions of the D&O Policy (defined *infra*) itself preclude any consideration of the policy proceeds as property of the estate.

11.    In support of the Motion, the Debtor also heavily relies on a concocted argument that under the terms of the D&O Policy, it is somehow obligated to fund, on a post-petition basis,

a $1,000,000 retention on behalf of the Non-Debtor Defendants.  The Debtor somehow concludes that this perceived funding obligation arises from the pendency of the Securities Litigation and therefore implicates property of the estate.  Of course, the D&O Policy was not provided with the Motion and was only provided upon the request of counsel for Darwin.[3]  A review of the D&O Policy, as more fully set forth, *infra*, at ¶36, reveals that as a result of the Debtor's Chapter 11 filing, there is no such obligation on the part of Debtor and the insurer is obligated to reimburse and/or fund the defense costs of the Non-Debtor Defendants without such payment by the Debtor.  It is curious, at best, given the express language of the D&O Policy and the Debtor's fiduciary obligation to its creditors, as to how and why the Debtor can reasonably even contemplate making such a payment in connection with subordinated pre-petition general unsecured claims.

12.     The purported collateral estoppel consequences raised by Delta are also illusory and inapplicable.  Collateral estoppel requires actual participation of a party in the litigation of the claim or issue in the first action.  As a result of the automatic stay of litigation against the Debtor, collateral estoppel cannot apply.  Delta is not a party to the Securities Litigation.  Thus, a critical element of collateral estoppel - the identity of the parties - is missing.  *See Allen v. McCurry,* 449 U.S. 90, 101 S.Ct. 441, 66 L. Ed. 2d 308 (1980).  Delta fails to explain how collateral estoppel will deny it the opportunity to litigate any claim or issue under the circumstances of this case, assuming there is any reason to do so given the fact that no claim against the Debtor has been filed and even if it had been, it would be statutorily subordinated to all general unsecured claims against the Debtor.

13.     Indeed, given all of the above and the absence of any economic risk to the Debtor, the balancing of the relative harms overwhelmingly weighs in favor of Darwin and the Putative

---

[3]     By letter dated May 3, 2012, the Court was apparently also provided with a copy of the D&O Policy.

Class and against extending the stay and issuing an injunction under Bankruptcy Code §105. The salutary effect of allowing the Securities Litigation to continue is obvious because it is likely to be the only source of recovery for Darwin and the members of the Putative Class, who have lost substantial dollars in connection their investment. No irreparable harm to the Debtor has been or can be established and, in the absence of same, there is simply no reason to prohibit the Securities Litigation from proceeding against the Non-Debtor Defendants. For all these reasons and the arguments detailed below, the Motion must be denied.

## ARGUMENT

### I.    The Motion Is Procedurally Deficient.

14.    The Motion seeks to extend the automatic stay to prevent Darwin and the Putative Class from continuing the prosecution of the Securities Litigation against the Non-Debtor Defendants. A request for such relief is "an action for injunctive relief." *Bora Bora*, 424 B.R. at 25; *Slabicki v. Gleason* (*In re Slabicki*), 466 B.R. 572, 2012 U.S. Dist. LEXIS 344, *25 (1st B.A.P., Feb. 3, 2012). Requests for injunctive relief are to be brought by adversary proceeding. Fed. R. Bankr. P. 7001 (7); *Bora Bora*, at 25, *Slabicki*, at *25, *In re Cincom iOutsource, Inc.*, 398 B.R. 223, 227 (Bankr. S.D.Oh. 2008) (holding that "a request for injunctive relief *must* be brought by adversary proceeding" (emphasis added)). Courts typically deny motions seeking injunctive relief. *In re Swallen's Inc.*, 205 B.R. 879, 880 (Bankr. S.D.Oh. 1997).

15.    Notably, in the case most heavily relied upon by Delta in the Motion, *The Majestic Star Casino v. Gary Indiana,* Case No. 09-14136 (KG), Adv. Pro. No. 10-50841 (KG) (a copy of the Memorandum Order, dated April 28, 2010 [D.I. 30] is annexed hereto as Exhibit A), the request for injunctive relief was properly brought by way of a verified adversary proceeding complaint. While *Majestic Star* is distinguishable from this case in many

fundamental respects and does not support the relief requested here (*see infra* at ¶42), not only was an adversary proceeding filed, but that case clearly involved property of the debtor's estate.

16.     Therefore, the Motion must be denied as it is an improper means to obtain the injunctive relief requested.  Delta's failure to seek this relief by adversary proceeding, without any evidentiary support (*e.g.*, verified complaint, affidavit) is, by itself, fatal.

## II.    The Bankruptcy Court Lacks Jurisdiction To Enjoin The Prosecution Of The Securities Litigation Against The Non-Debtor Defendants.

17.     As a threshold question, the Court must determine whether or not it has subject matter jurisdiction to enjoin the Securities Litigation (or even to extend the automatic stay) as it relates to the Securities Litigation against the Non-Debtor Defendants.  The Third Circuit Court of Appeals in *Gillman v. Continental Airlines (In re Continental Airlines)*, 203 F.3d 203, 214 n. 12 (3d Cir. 2000), has expressed its concern (in the context of a confirmation hearing) "that the Bankruptcy Court apparently never examined its jurisdiction to release and permanently enjoin [the third party's] claims against non-debtors."  While certain disputes between non-debtor third parties affecting the debtor and the bankruptcy case may be within the subject matter jurisdiction of the Court, it is not without limits and the Court "cannot simply presume it has jurisdiction in a bankruptcy case to permanently enjoin third-party *class actions* against non-debtors."  *Id.* (emphasis added).

18.     To the extent a third party claim is derivative, a bankruptcy court has subject matter jurisdiction.  *In re Dreier LLP*, 429 B.R. 112, 131 (Bankr. S.D.N.Y. 2010)(finding that where the subject of the dispute against the non-debtor involves property of the estate or will impact the estate, the court has "related to" jurisdiction to enjoin the claim (providing, of course, that the other legal requirements are met)); *see also Steel Workers Pension Trust v. Citigroup, Inc.*, Civ. A. No. O3-cv-2171, 2003 U.S. Dist. LEXIS 12392, at *8-*9 (E.D. Pa. July 17,

2003)(determining that "related to" bankruptcy jurisdiction did not exist).  The analysis here is the same because both "related to" jurisdiction under 28 U.S.C. §1452 and an injunction under 11 U.S.C. §105 require that the case against the non-debtor affect the debtor's estate.   It follows that enjoining direct actions which seek recovery from non-debtors for their own independent wrong-doing (such as is present in the Securities Litigation) are not within the bankruptcy court's jurisdiction. *Dreier*, 429 B.R. at 131.

19.    The Court's personal jurisdiction is also questionable as Darwin was not personally served with the Motion.  A copy of the Motion was delivered by overnight mail to Darwin's counsel.  Counsel was not authorized to accept service, nor did Debtor's counsel even request the same.[4]

## III.    The Automatic Stay Should Not Be Extended To Enjoin The Securities Litigation Pursuant To 11 U.S.C. §362(a)(1) Or (a)(3).

A.    *11 U.S.C. §362(a)(1) does not provide for a stay of prosecution of the Securities Litigation against the Non-Debtor Defendants.*

20.    By its plain language, Bankruptcy Code §362(a)(1) stays actions only against a debtor.  The stay, however, does not extend automatically to non-debtors.  "[S]tays pursuant to 362(a) are limited to debtors and 'do not encompass non-bankrupt co-defendants . . .' 'Chapter 11 . . . contains no provision to protect non-debtors who are jointly liable on a debt with the debtor.'"  *In re Crazy Eddie Sec. Litig.*, 104 B.R. 582, 583-84 (E.D.N.Y. 1989), quoting *Teachers Ins. & Annuity Ass'n v. Butler*, 803 F.2d 61, 65 (2d Cir. 1986); and *see McCartney v. Integra National Bank North,* 106 F.3d 506, 509, 510 (3rd Cir. 1997) (despite its broad scope, "the language of Section 362(a) stays actions only against a debtor"); *Rickel Home Centers, Inc., v. Baffa (In re Rickel Homes Centers, Inc.),* 199 BR 498, 500-01 (Bankr, D. Del. 1996).

---

[4]    The submission of this Objection is not a consent to lack of personal jurisdiction, but is filed to preserve Darwin's rights should the Court consider the merits of the Motion.

21.     Therefore, lawsuits against officers and directors of a corporate debtor are usually not stayed"); *In re United Health Care Org.*, 210 B.R. 228, 232 (S.D.N.Y. 1997) (noting that "stays pursuant to 11 U.S.C. §362(a) are limited to debtors and may not be extended to non-bankrupt entities"); *Ripely v. Mulroy*, 80 B.R. 17, 19 (E.D.N.Y. 1987) ("[t]he automatic stay provision was intended by Congress to apply to the debtor only, and not to others"); *see also Eastern Air Lines v. Rolleston (In re Ionosphere Clubs, Inc.)*, 111 B.R. 423, 430 (Bankr. S.D.N.Y. 1990), *aff'd in relevant part*, 124 B.R. 635 (S.D.N.Y. 1991) ("[t]his Court must also look to its powers pursuant to §105(a) [not §362] of the Code to expand the scope of the automatic stay"); *Crazy Eddie*, 104 B.R. at 583-84 (holding that the stay can only be extended by use of the court's equity powers when unusual circumstances exist).

22.     Furthermore, where, as here, a party has an independent claim against the non-debtors for violating their duties under federal securities laws, then "there is no compelling basis by which a court must extend the automatic stay provisions of §362 to non-debtor co-defendants." *Ochs*, 238 B.R. at 18, quoting, *Duval v. Gleason*, 1990 U.S. Dist. LEXIS 18398 (N.D. Cal. 1990); *see also Holland v. High Power Energy*; 248 B.R. 53, 58 (S.D.W. Va. 2000) (automatic stay is inapplicable when a third party has "obligations that are 'independent' and primary, not derivative of those of the debtor."); *In re Phar-Mor Securities Litigation*, 166 B.R. 57, 62 (W.D. Pa. 1994) ("the Code was not intended to stay action...where the non-debtor's liability rests upon his own breach of duty"); *Chesapeake Crossing Associates v. TJX Companies, Inc.*, 1992 WL 469801, *4 (E.D. Va. 1992) ("a third party defendant will not be covered under the stay...where the non-debtor's liability rests upon his own breach of duty").

23.     To extend the stay in favor of the Non-Debtor Defendants in this case would provide the Non-Debtor Defendants with the protection of the Bankruptcy Code without

requiring them to comply with its requirements and make full disclosure of their financial condition, as the Debtor must do.  The Non-Debtor Defendants should not be allowed to benefit from the Debtor's circumstances at the expense of shareholders and former shareholders in the Securities Litigation who have substantial losses.

B.  *Because property of the estate is not impacted by the Securities Litigation, 11 U.S.C. §362(a)(3) is not applicable.*

24.  The Securities Litigation was filed against non-debtors based upon their own conduct for which they are independently liable.  Neither the existence of an insurance policy that covers liability for the conduct of directors and officers while acting in their corporate capacities, nor the fact that the Debtor may be faced with indemnification claims by the Non-Debtor Defendants, renders the Securities Litigation subject to a stay under 11 U.S.C. §362(a)(3).[5]  Courts that have considered whether the proceeds of directors and officers' insurance policies are property of the estate have often focused on whether the proceeds cover liability only, or if the proceeds may also be used for indemnification.  *In re Louisiana World Exposition, Inc.*, 832 F.2d 1391 (5th Cir. 1987).  "The question is not who owns the policies, but who owns the liability proceeds."  *Id.* at 1399.  If the proceeds of the policy go directly to the officers and directors and not to the Debtor, then the proceeds are not property of the estate.  *Id.*[6] "With regard to the liability proceeds, the obligation of the insurance companies was only to the directors and officers and they are the named and the only insureds."  *Id.*

25.  The *Louisiana World* court held that the proceeds of the policy were not property of the estate.  In that case, the policies provided both liability coverage for the directors and

---

[5]  The automatic stay applies to "any act to obtain possession of property of the estate or property from the estate or to exercise control over property of the estate."  11 U.S.C. §362(a)(3).

[6]  *See also Duval v. Gleason*, 1990 U.S. Dist. LEXIS 18398, Bankr. L. Rep. (CCH) ¶73, 721, Fed. Sec. L. Rep. (CCH) ¶95,694, at 98,260 (N.D. Cal. 1990) ("for purposes of bankruptcy adjudication, such proceeds belonged more properly to the directors and officers themselves for whose sole benefit they were disbursed"); *see also In re Vitek, Inc.*, 51 F.3d 530, 534 (5th Cir. 1995)

officers and separately provided for indemnification coverage. "Each policy...provided a single total amount of coverage which was applicable to both the indemnification and the liability protections jointly, so that payment under either reduced the amount of coverage remaining available under both." *Id.* at 1398. This type of coverage is normal for directors and officers and is purchased as "an inducement and a type of compensation." *Id.*

26.    Similarly, in holding that a policy providing both liability coverage for the directors and officers and indemnification coverage for the company was not property of the estate, one court reasoned that "[a]n insurance policy purchased by the debtor is only an asset to the extent that it increases the debtor's worth or diminishes its liabilities." *In re Zenith Lab. Inc.*, 104 B.R. 659, 665 (D.N.J. 1989). In this case, the insurance policy will do neither. Any such proceeds will flow directly to injured members of the Putative Class or to the Non-Debtor Defendants themselves for legal fees, thereby protecting the Debtor from indemnification claims by the Non-Debtor Defendants (which claims will be subordinated).

> [I]n undertaking a property of the estate analysis under §541 of the Bankruptcy Code, several courts have made a distinction between insurance policies owned by a debtor, and the proceeds payable under the policies. *See In re Goodenow,* 157 B.R. 724, 725 (Bankr. D. Me. 1993). Specifically, where the debtor owns the policies but has no interest in the proceeds, the proceeds are not property of the estate. *See In the Matter of Edgeworth*, 993 F.2d 51, 56 (5th Cir. 1993). ("When a payment by the insurer cannot inure to the debtor's pecuniary benefit, then that payment should neither enhance nor decrease the bankruptcy estate."); *In re First Central Financial Corp.*, 238 B.R. 9, 16 (Bankr. E.D.N.Y. 1999) (discussing the goal of a D&O insurance policy as the "protection of individual directors and officers.") … the fact that [the debtor] obtained and owns the Policies here is not determinative. Instead, the court must focus on who has the rights against the Proceeds.

*CHS Electronics*, 261 B.R. at 541-42.[7]

---

[7]    The coverage under the CHS policies extended only to the exposure of the officers and directors and was payable only for that purpose. The directors and officers held the property interest, not the estate. Rather than

27.     If the officers and directors own a portion of the proceeds, "that portion cannot be deemed property of the Estate; and perforce there can be no justification for shielding such portion under the bankruptcy court's injunctive orders, the reach of which extends only to property of the Estate." *In re Vitek, Inc.*, 51 F.3d at 536.

28.     As the court stated in *In re Granite Partners, L.P.*, 194 B.R. 318, 337-338 (Bankr. S.D.N.Y. 1996):

> The issuance of the injunction involves consideration of many factors.   These include whether the suits threaten the debtor's insurance coverage or increase the debtor's indemnification liability, as well as the other factors the two courts discussed.  *This implies that the mere threat to the policy does not implicate the automatic stay, and that the Court should not extend the automatic stay if that is the only "injury" that the debtor can show.  In this regard, the debtor's insurance policy is property of the estate as is its contractual right to indemnification coverage under the policy. The directors' and officers' contractual right to liability coverage, however, is not.  We are not convinced that an action by a third party to recover a judgment against another third party, whose liability may be covered under an insurance policy that also grants the debtor separate rights, implicates the automatic stay.*
>
> *      *      *
>
> *Directors and officers contemplating a corporate bankruptcy could insulate themselves from most post-bankruptcy lawsuits -- if they had not already done so -- simply by purchasing the precise type of insurance designed to protect them in the event of such a lawsuit. This is not the kind of "insurance" the policy is designed to afford.*

(Emphasis added).

29.     Furthermore, Judge Walrath determined that with respect to claims that are not derivative:

> [11 U.S.C. §] 362(a) is not applicable to proceeds of the insurance even where the debtor may have [a claim against the directors and officers] in addition to the typical [entity coverage claim] because

grant a property interest in the proceeds of the policies, the *CHS* court allowed payment of claims under the policy to reduce coverage provided to the debtor.

> the action of the securities Lead Plaintiffs is not an act to obtain possession of property of the estate. The only property that the estate has is not the proceeds of the insurance policy. The only property of the estate is a possible claim against the insurance policy similar to the claims which the D&O['s] and the plaintiff's security class may have. And the action of the Lead Plaintiffs in pursuing their claims is not taking any action to obtain possession of that property of the estate…All the estate has is claim, and somebody else pursuing their [sic] claim does not affect or is not an act to obtain possession of the estate property.

*In Re Quintus Corporation,* Case No. 01-501 (J. Walrath, Bankr. D. Del., April 10, 2002) (Transcript, at 45, l. 6-22) (a copy of the relevant portions of the transcript is annexed hereto as Exhibit B).

30.     The issue of whether the proceeds of a D&O policy are or are not property of a debtor's estate was fully vetted by the Delaware Bankruptcy Court in *In re Allied Digital Technologies Corp.*, 306 B.R. 505 (Bankr. D. Del. 2004). Delta's reliance on *Allied* is misplaced as the case goes far beyond the *dicta* cited in the Motion at ¶24. After examining the coverage provided by the *Allied* policy, the Court concluded that the proceeds of a policy providing only direct coverage for the debtor are property of the estate, and if only for directors and officers, the proceeds are not property of the estate. *Allied*, at 512. Further analysis is required where the policy provides multiple coverage.

31.     Here, Delta's policy provides direct coverage to the Non-Debtor Defendants (Insuring Agreement A). *See* Executive Choice Travelers D&O Policy No. 15606651 (the "<u>D&O Policy</u>", annexed hereto as Exhibit C), Sec. I. A. The D&O Policy further provides indemnification coverage (Insuring Agreement B) (D&O Policy, Sec. I. B.) and entity coverage (Insuring Agreement C) (D&O Policy, Sec. I. C.). The proceeds of liability policies that provide direct coverage for both a debtor (the entity) and the directors and officers are property of the estate only "if depletion of the proceeds would have an adverse effect on the estate to the extent

the policy actually protects the estate's other assets from diminution." *Allied*, at 512;[8] *see also In re World Health Alternatives, Inc.*, *Securities Litigation*, 2007 U.S. Dist. LEXIS (W.D. Pa. June 8, 2007) (where the policy provided Side A, B and C coverage; the proceeds were not property of the estate where indemnification was only speculative); *In re Downey Financial Corp.,* 2010 WL 1838565 (Bankr. D. Del. May 7, 2010) (where access to the D&O policies was sought to pay the defense costs of the debtor's officers and directors, Judge Sontchi concluded, following the analysis in *Allied*, that the proceeds were not property of the estate).

32.    Not insignificantly, the D&O Policy here at issue has a standard Order of Payments provision which obligates the insurer to first pay any Loss (as defined in the D&O Policy) covered under Insuring Agreement A (the individual directors and officers).  D&O Policy, Sec. V. I.1 (the subsequent Endorsement to this section of the D&O Policy does not impact the order of payment in this regard).  Therefore, Delta has no interest in the proceeds of the D&O Policy unless and until all obligations to the individual directors and officers (the Non-Debtor Defendants) have been fully satisfied.

33.    After a detailed analysis of the varying case law, one district court held that the proceeds of a D&O policy were not property of a debtor's estate because "no recognizable equitable and legal interest in the proceeds from the D&O policy has arisen…Without legal and equitable interest in the proceeds, [the debtor's] estate cannot be ascribed to hold a property interest in those proceeds." *In re Adelphia Communications*, 298 B.R. 49, 53-54 (S.D.N.Y. 2003).  That court's rationale was based upon the fact that despite the presence of entity coverage under the D&O policy, the debtor had made no payments on account of indemnification claims by the individual insureds and therefore had no claim to the proceeds.

---

[8]    In *Allied,* the Court found that because there was only indemnification coverage for the debtor and no indemnification had occurred or was hypothecated, the proceeds were not property of the estate. *Allied*, at 512-13.

*Id.*, at 53.  As a result, the debtor in *Adelphia Communications*, like the Debtor here, had no interest in the proceeds and the proceeds were not property of the estate.

34.    No proof of claim based upon the Securities Litigation has been filed against the Debtor nor is any action pending against the Debtor.  The bar date has come and gone.  There is no evidence that the Debtor is indemnifying the Non-Debtor Defendants post-petition.  Such a payment on a pre-petition general unsecured claim (that is likely subject to subordination) would be violative of the Bankruptcy Code and a breach of the Debtor's fiduciary duty to its unsecured creditors.  Hence, at best, the Non-Debtor Defendants will have subordinated pre-petition claims that will likely have no economic impact on the estate.  Accordingly, the Securities Litigation poses no economic threat to the Debtor.  The proceeds of the D&O Policy will, in any event, flow to the parties whom the Debtor now seeks to enjoin.  Additionally, given the apparent absence of any potential recovery for equity holders in this Chapter 11 proceeding, and in accordance with 11 U.S.C. §510(b), neither the putative class nor Non-Debtor Defendants with potential indemnification claims will recover anything from the Debtor.  Clearly, under the *Allied* analysis and the terms of the D&O Policy itself, the proceeds of the D&O Policy are not property of the estate.

35.    Delta also makes much of the  argument that its purported obligation to indemnify the Non-Debtor Defendants for claims based upon pre-petition conduct and that such obligation will deplete the available insurance or other estate assets because of the D&O Policy deductible or retention.  Such a position flies in the face of the language of the D&O Policy  The Retention simply does not apply to the coverage of the claim asserted against the Non-Debtor Defendants in the Securities Litigation given the intervening Chapter 11 filing.

36.    The D&O Policy expressly provides that "*no Retention applies to loss covered by Insuring Agreement A . . . except as* otherwise provided in Section V. **CONDITIONS, D. PRESUMPTIVE INDEMNIFICATION.**"    D&O Policy, V.B (emphasis added).    The limited exception referred to is applicable only if the insured entity does not indemnify an insured for reasons other than Financial Insolvency.    D&O Policy, V.D.    Even then, the insurer must still advance defense costs and pay any other Loss, but would potentially have a subrogation right against the company.    However, that is not the case here because the $1,000,000 Retention is not applicable to a non-indemnifiable Loss.    D&O Policy, Item 5, page 2.    Financial Insolvency includes where the insured becomes a debtor under the Bankruptcy Code.    D&O Policy, III.J. Thus, because of Delta's inability to indemnify the Non-Debtor Defendant as a result of its bankruptcy, there is no obligation for Delta to pay the Retention, and any argument based upon the  alleged necessity to do so is baseless.

37.    Clearly, Delta here has no interest in the proceeds of the D&O Policy, both as a matter of law and a matter of contract.    Moreover, Delta has no obligation to pay anything; any payment based upon the illusory Retention would be gratuitous.    Indeed, there is no evidence that Delta has made or should make any indemnification payments to the Non-Debtor Defendants.    Accordingly, any argument by the Debtor that plaintiffs in the Securities Litigation are attempting to obtain possession of property of the estate is wholly without merit.    Bankruptcy Code §362(a)(3) is not implicated in any way and cannot be used by Delta to extend the automatic stay to enjoin the Securities Litigation.

IV.    **Extension Of The Automatic Stay To Non-Debtor Defendants Is Not Warranted Under 11 U.S.C. §105(A) And Works Disproportionate Harm On The Purported Class.**

A.    *The Debtor cannot justify the extraordinary relief requested.*

38.    Although Delta requests relief in a motion to extend the automatic stay, Delta references Bankruptcy Code §105(a) in its introduction to the Motion, stating that Delta "hereby moves . . . pursuant to 105(a) . . . ," Motion, at 1.   Regardless of the means, the end is not justified.   Delta fails to meet the heavy burden to justify such extraordinary injunctive relief and its statement at paragraph 20 of the Motion that the injunctive relief it requests is granted routinely is to the contrary.   "While 11 U.S.C. §105(a) does grant the bankruptcy court broad powers to issue any order necessary or appropriate to carry out the provision of this title, *it is an extraordinary exercise of discretion to use that power to stay [or extend the automatic stay] a third party action not involving the debtor."*   *In re Brentano's, Inc.*, 36 B.R. 90, 92 (S.D.N.Y. 1984) (emphasis added).   Only when a suit by a third-party against other third-parties "threaten[s] to thwart or frustrate the debtor's reorganization efforts" may bankruptcy courts extend the automatic stay under 11 U.S.C. §105(a).   *Adelphia Communications*, 298 B.R. at 54, quoting *Granite Partners,* 194 B.R. at 337.   There is no evidence to that effect here.

39.    Unlike the automatic stay provided by Bankruptcy Code §362(a)(1), a party seeking to obtain an injunction benefiting non-debtors under Bankruptcy Code §105(a) must satisfy the heavy burden of showing unique and extraordinary circumstances.   *In re Third Eighty-Ninth Assoc.* 138 B.R. 144, 146 (S.D.N.Y. 1992) (the burden is on the debtor to establish that circumstances require extending the automatic stay).   Debtors must establish a "truly 'extraordinary set of circumstances'" to enjoin the prosecution of claims against non-debtors.   *In re University Med. Ctr.*, 82 B.R. 754, 757 (Bankr. E.D. Pa. 1988) (quoting *In re Metro Transp. Co.*, 64 B.R. 968, 974 (Bankr. E.D. Pa. 1986)); *see also, In re Arrow Huss, Inc.*, 51 B.R. 853,

859 (Bankr. D. Utah 1985). "[Section] 105(a) 'is not to be employed as a loose cannon...to support otherwise unsupportable claims'" *In re University Medical Ctr.*, 82 B.R. 754, 757 (Bankr. E.D. Pa. 1988) (quoting *Sinkow v. Latimer (In re Latimer)*, 82 B.R. 354, 364 (Bankr. E.D. Pa. 1988)).

40.    To obtain injunctive relief under Bankruptcy Code §105(a), Delta must demonstrate:  (1) a substantial likelihood that the movant will prevail on the merits; (2) a substantial threat that the movant will suffer imminent and irreparable injury if the injunction is not granted; (3) that the threatened injury to the movant outweighs the threatened harm an injunction might cause the party opposing the injunction; and (4) that the granting of the injunction will not disserve the public interest. *United Health Care Org.*, 210 B.R. at 233; *In Re Zale Corp.*, 62 F.3d 746, 765 (5th Cir. 1995); *In re Commonwealth Oil Refining Co.*, 805 F.2d 1175, 1188-89 (5th Cir. 1986).

41.    The requirements of an injunction are "conjunctive and all of them must be established in order to obtain the relief sought." *In re Provincetown Boston Airline*, 52 B.R. 620, 625 (Bankr. M.D. Fla. 1985).  "'Injunctive relief is an extraordinary and drastic remedy, not to be granted routinely, but only when the movant, by a clear showing carries the burden of persuasion.'"  *In re Continental Air Lines, Inc.*, 61 B.R. 758, 782 (S.D. Tex. 1986) (citation omitted).  "The 'movant must make out a clear showing of hardship and adverse impact on the reorganization case if there is even a fair possibility that the stay will prejudice an adverse party.'"  *Id.* at 781 (citation omitted).  The movant must establish that the damage it will suffer if the injunction is denied "'plainly outweighs any foreseeable harm to the [non-movant].'"  *Johns-Manville*, 26 B.R. at 415 (citation omitted).  *See Sabratek Corp v. LaSalle Bank, N.S. (In re Sabratek Corp.)*, 257 B.R. 732 (Bankr. D. Del. 2000), where the Court declined to enjoin a state

court matter between non-debtor parties, which did not involve property of the estate, because there was no showing of irreparable harm.

42.    Some courts have determined that an even more stringent standard should govern when a debtor seeks to enjoin an action against executive officers in a securities class action context, as is the case here.  Indeed, the current climate of rampant executive malfeasance and corporate fraud mandates such a stringent standard.  In *Duval, supra*, the court reasoned:

> Unlike a products liability action in which a suit against an officer is effectively one against the corporation itself, the present securities action seeks to attach liability for the specific fraudulent acts of named individuals.  *Thus the securities laws allow for the independent liability of the officers or other parties involved, and proceedings like the present may go forward without the participation of the corporation.*  To hold otherwise would allow the Bankruptcy Act to create a sizable loophole through which malfeasant corporate officers and directors and their insurers could escape, at least temporarily, all civil prosecutions of their individual fraudulent acts by having the corporation file a bankruptcy petition.  *We cannot agree that the protections afforded by the Bankruptcy Act were intended to be so all encompassing as to shield such non-debtor third parties.*

*Id.* at 98,260, (emphasis added); *see also GATX Aircraft Corp. v. M/V Courtney Leigh*, 768 F.2d 711, 716 (5th Cir. 1985); *Williford v. Armstrong World Indus., Inc.*, 715 F.2d 124, 128 (4th Cir. 1983); *Morgan v. Kobrin Sec. Inc.*, 649 F. Supp. 1023, 1032 (N.D. Ill. 1986).  Indeed, many of the cases cited by Delta (*Gerard v. W.R. Grace & Co.*, No. 03-3453, 2004 WL 2404546 (3d Cir. 2004); *A.H. Robbins Co. Inc. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986), *cert. denied*, 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986); *In re Johns-Manville Corp.*, 26 B.R. 420 (S.D.N.Y. 1990)) involved asbestos or personal injury claims which are far different than the claims asserted in the Securities Litigation.  Indeed, the *Majestic Star Casino* case, again heavily relied upon by Delta, did not involve securities litigation.

43. The Debtors have failed to meet their heavy burden of showing imminent and irreparable harm. Irreparable harm in the context of a reorganization is shown where the failure to enjoin the actions "would embarrass, burden, delay or otherwise impede the reorganization." *Alert Holdings, Inc. v. Interstate Protective Servs., Inc.*, 148 B.R. 194, 200 (Bankr. S.D.N.Y. 1992); *In re Continental Airlines*, 177 B.R. 475, 481 n.6 (D. Del. 1993) (the debtor must show that the securities litigation "'would so consume the time, energy and resources of the debtor that it would substantially hinder the debtor's reorganization effort'" (citations omitted)). Strict proof, not conclusory allegations are needed to sustain this burden *Dore & Assocs. Contracting, Inc. v. American Druggists' Ins. Co.*, 54 B.R. 353, 358 (Bankr. W.D. Wis. 1985) ("Speculative and conclusory allegations are clearly insufficient."); *In re Phar-Mor, Inc. Sec. Litig.*, 166 B.R. 57, 62-63 (W.D. Pa. 1994) (in denying a request for an injunction under Bankruptcy Code §105, the court found the allegation that pursuit of an action against the debtor's auditor would delay the reorganization was "mere speculation [that did] not constitute the type of proof required to entitle the Debtors to an injunction").

44. Here, Delta has provided this Court with absolutely no evidentiary basis on which to issue the extraordinary injunctive relief that the Debtor seeks for the benefit of the Non-Debtor Defendants. The continuation of the Securities Litigation does not threaten the reorganization process in any way. Indeed, the Debtor does not allege even anticipated or speculative harm that *may* occur in the future. The Debtor has submitted no affidavits to substantiate the alleged distraction of its officers and directors from the reorganization process. The Debtor has provided no evidence whatsoever that the Non-Debtor Defendants will be so distracted by the Securities Litigation or are so involved with the Debtor's day-to-day operations that the Debtor's reorganization efforts will be impaired. *See* ¶¶48-50, *infra*. Indeed, the Debtor has retained a

chief reorganization officer, who is not a defendant in the Securities Litigation, and financial advisors who are presumably orchestrating the Debtor's reorganization efforts (if, indeed, the Debtor is actually reorganizing). Hence, there are no unusual circumstances to warrant the extraordinary relief requested and the absence of any evidence of same is fatal to the Debtors' Motion.

45.    The two leading cases extending the stay under Bankruptcy Code §105 to non-debtor co-defendants are easily and fundamentally distinguishable from the instant case. In both *A.H. Robins v. Piccinin*, 788 F.2d 994 (4th Cir. 1986), *cert. denied*, 479 U.S. 876, 107 S. Ct. 251, 93 L. Ed. 2d 177 (1986), and *Matter of Johns-Manville  (Johns-Manville v. Asbestos Litig. Group)*, 26 B.R. 420 (Bankr. S.D.N.Y. 1983), *aff'd*, 40 B.R. 219 (S.D.N.Y. 1984), *rev'd in part on other grounds*, 41 B.R. 926 (S.D.N.Y. 1984), the non-debtor co-defendants were faced with truly "unusual circumstances." Both cases involved thousands of *tort* actions pending against non-debtor co-defendants with whom the debtors would be held jointly and severally liable. *See A.H. Robins*, 788 F.2d at 994; *Johns-Manville*, 26 B.R. at 422. The time and effort needed to defend such a massive number of suits and the obvious drain on the estate's assets provided the justification for the court's extension of the stay. These "unusual circumstances," *A.H. Robins*, 788 F.2d at 999, are "'the [s]omething more than the mere fact that one of the parties to the lawsuits has filed a Chapter 11 bankruptcy petition [that] must be shown in order that proceedings be stayed against non-bankrupt parties.'" *Matter of Johns-Manville (GAF Corp. v. Johns-Manville)*, 26 B.R. 405, 410 (Bankr. S.D.N.Y. 1983), quoting *Royal Truck & Trailer v. Armadora Maritima Salvadoreana*, 10 B.R. 488, 491 (N.D. Ill. 1981).

B.    *The Securities Litigation will not irreparably harm the Debtor by distracting its officers and/or directors from the reorganization.*

46.    Delta argues that continuation of the Securities Litigation against the Non-Debtor Defendants will interfere with its reorganization because key personnel will be distracted when their time, energy and commitment to the Debtor's reorganization is needed.  This unsupported argument is, at best, based upon some imaginary irreparable harm and is seriously flawed.

47.    The Debtor cannot show, and, indeed, has not shown, irreparable harm to its efforts to reorganize if the Securities Litigation is allowed to proceed against the Non-Debtor Defendants.  In this regard, courts have denied a preliminary injunction, in part, because the individual defendants described their bankruptcy duties "largely in generalities" and did not "point to any new, particularly time-consuming duties which arose as a result of the Chapter 11 filing."  *University Medical Ctr.*, 82 B.R. at 756.  Similarly, here, the Debtor has alleged no specific duties to be performed by the Individual Non-Debtor Defendants.

48.    The Debtor does not identify "any new … time-consuming duties [of the Non-Debtor Defendants] which arose as a result of the Chapter 11 filing," as required by *University Medical*, 82 B.R. at 756.  Indeed, any new duties would likely fall on the chief restructuring officer.  Because the issue of Non-Debtor Defendants' time "is fact-determinative, and the burdens upon the non-debtors to meet the necessary criteria [are] very demanding," Delta must do more than generally state that purportedly key personnel will not have time to both litigate the claims in the Securities Litigation and contribute to the reorganization.  *Id*. at 758.  This distinction is illustrated by *In re MacDonald/Assocs., Inc.*, 54 B.R. 865 (Bankr. D.R.I. 1985), where the non-debtor defendants were essential to the debtor's efforts to reorganize because they were "the debtor's *only* executives, and the only people in management positions with any responsibility or authority."  *Id*. at 870 (emphasis added).  There is no similar evidence presented

herein, especially because a company the size and magnitude of Delta presumably has more than three people who may be charged with its operations.

49.    In the Northwest Airlines Chapter 11 proceedings (Case No. 05-17930), in the Southern District of New York, Judge Gropper, under circumstances strikingly similar to this case, denied the debtors' motion to enjoin both the securities and ERISA class action litigation. In rendering his decision, Judge Gropper recognized that the subject class actions were typical of those filed against the directors and officers of a corporate debtor. *See* Transcript of March 7, 2006 hearing ("*Northwest* Tr."), at 65, lines 5 to 10 (a copy of the relevant pages of the *Northwest* transcript reflecting Judge Gropper's decision is annexed hereto as Exhibit "C").   In responding to the debtors' argument that their officers and directors will be distracted by the securities and ERISA litigation, Judge Gropper correctly determined that the record before the court (similar to the record herein which is devoid of any competent evidence that a Non-Debtor Defendant will be distracted from the reorganization), "does not justify a blanket injunction." *Northwest* Tr., at 66, lines 18 to 25.   Acknowledging that some cases have extended the automatic stay to non-debtors, but only when the debtor therein has shown "true irreparable injury and a balance of the harm that demonstrates an immediate need for relief," Judge Gropper concluded that such "relief has not been routinely granted in routine class actions, and the law should not be so extended."   *Northwest* Tr., at 67, line 21 to 68, line 9 (citations omitted) (emphasis added).   Clearly, Judge Gropper's reasoning is persuasive here.   In fact, earlier in that hearing, Judge Gropper questioned the implication of the relief requested:

> if I stay their action, I think the result would be that any class action brought against any large company in bankruptcy would be stayed.

*Northwest* Tr., p. 35, line 3-6.

50.     Clearly, there is no evidence that the Non-Debtor Defendants will be so tied up in the Securities Litigation that they will be incapable of functioning in the Chapter 11 case. Indeed, no such evidence can exist at this juncture.  The Debtor fails to advise the Court that the Securities Litigation is in its infancy.  The Complaint was filed on April 18, 2012.  Motions for the appointment of lead plaintiff are not due until June 17, 2012 and briefing closes on July 31, 2012.  A determination on the lead plaintiff appointment may not occur for sixty (60) days thereafter (as late as October 1, 2012).  At that point, a schedule for the filing of a consolidated complaint and briefing motions to dismiss will be set.  Indeed, not until after the lead plaintiff is appointed will *counsel* for the Non-Debtor Defendants even need to become involved and motions to dismiss are purely lawyer-driven and will involve little, if any, input from the Non-Debtor Defendants themselves.  They will be free to devote whatever time is necessary in what appears to be a liquidating Chapter 11.  Given the status of the Securities Litigation, there can and will be no distraction to the Non-debtor Defendants for many months and even likely for over a year.

C.      *Delta's arguments concerning indemnification do not meet the requirements for issuance of a preliminary injunction nor warrant an extension of the automatic stay.*

51.     Delta's indemnification obligations (if any) do not compel a stay of the Securities Litigation.  *First*, it is well settled that complete indemnification of liability for violations of the federal securities laws is contrary to public policy and, accordingly, may not be pursued.  *See, e.g., Laventhol, Krekstein, Horwath & Horwath v. Horwitch*, 637 F.2d 672, 676 (9th Cir. 1980); *Tucker v. Arthur Andersen & Co.*, 646 F.2d 721, 724 (2d Cir. 1981); *Stowel v. Ted S. Finkel Inv. Servs., Inc.*, 641 F.2d 323, 325 (5th Cir. 1981); *Eichenholtz v. Brennan*, 52 F.3d 478, 484-85 (3rd Cir. 1995) (citation omitted).  Therefore, unlike *AH Robins, supra*, there is no absolute indemnity obligation on the part of the Debtor.

52.    *Second*, the fact that the Non-Debtor Defendants may assert indemnification claims against the Debtor does not in-and-of-itself warrant a finding that the Securities Litigation should be stayed.  *In re Codfish Corp.*, 97 B.R. 132, 135 (Bankr. D.P.R. 1988); *In re All Seasons Resorts, Inc.*, 79 B.R. 901, 904 (Bankr. C.D. Cal. 1987).  "Although there is a closeness between debtor and co-defendants by reason of their officer and agent status and their right to indemnification pursuant to debtor's by-laws, the magnitude of the harm to debtor if no stay is in force does not approach the scope of the potential injuries besetting the debtors in *Robins* and *Johns-Manville*."  *Id.*  The right to indemnification "is a right which these agents have.  It is not a property interest of debtor."  *Id.* at 904.  Thus, the mere possibility that the Debtor may be faced with indemnification claim by its officers and directors (the Non-Debtor Defendants) does not warrant an injunction under 11 U.S.C. §105.  *See In re First Alliance Mortg. Corp.*, 264 B.R. 634, 660 (C.D. Cal. 2001) ("At this point whether the individuals would be able to seek … indemnification … is at best an open question"); *Steel Workers Pension Trust*, 2003 U.S. Dist. Lexis 12392, at *8-*9 (the "mere potential impact upon the debtor's estate is insufficient.  Contingent liability will not suffice").

53.    *Third*, indemnification claims will exist whether the Securities Litigation is stayed or allowed to proceed and, to the extent indemnifiable, the directors and officers have direct insurance coverage under the D&O Policy, as well as a contractual priority interest in the proceeds of the D&O Policy.  The claims against the estate, if they ever exist, are simply contingent or unliquidated claims, which will have to be estimated under 11 U.S.C. §502(c)(1) or expunged under 11 U.S.C. §502(e)(1)(B), and, in any event, will be subject to subordination under 11 U.S.C. §510(b).  The Non-Debtor Defendants, if found liable, may seek indemnification from the Debtor (if the insurance under the D&O Policy does not or is not

sufficient to cover these claims), "but their claim will be treated like any pre-petition, unsecured claim.  In all likelihood, they will not get paid in full."  *All Seasons Resorts*, 79 B.R. at 904. Indeed, the Individual Non-Debtor Defendants' claim(s) will ultimately be expunged or subordinated pursuant to Bankruptcy Code §510(b).  In either event, there will be no economic impact on the estate and thus, there is no basis for an injunction.  *See Reliance Acceptance Group Inc. v. Levin (In re Reliance Acceptance Group Inc.)*, 235 B.R. 548, 557 (D. Del. 1999) (holding that indemnification claims by officers and directors are not a basis for enjoining securities litigation by a debtor's shareholders).

        D.    *Delta will not be collaterally estopped from litigating any issue.*

        54.    Delta also asserts that it may be collaterally estopped from litigating any issue decided in the Securities Litigation.  That argument, too, is without merit.  Collateral estoppel may not be applied against a party in a subsequent proceeding where the party did not have a full and fair opportunity to litigate the claim or issue in the prior proceeding.  *Allen v. McCurry*, 449 U.S. at 96-97, 66 L.Ed. 2d at 314-15; *Haring v. Prosise*, 462 U.S. 306, 313, 103 S.Ct. 2368, 76 L.Ed. 2d 595, 603 (1983).  As the United States Supreme Court held in *Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 59 L.Ed 2d 210, 217 (1979):

> [u]nder collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action *involving any party to the prior litigation*.

*Id.* (emphasis added).  Here, the automatic stay precludes any action against Delta.  Darwin has not filed an individual or class proof of claim against Delta and the bar date has passed.  Delta is not a party to the Securities Litigation and, thus, cannot be collaterally estopped from litigating any issue and there is no claim against Delta to litigate.

55.    Furthermore, "corporations are treated as entities separate from their officers, directors and shareholders for purposes of preclusion just as for other purposes. Without more, judgments intended in actions against any one of them are not binding on the other." CHARLES ALAN WRIGHT ARTHUR R. MILLER and EDWARD COOPER, FEDERAL PRACTICE AND PROCEDURE §4460, at 533 (1981); RESTATEMENT (SECOND) OF JUDGMENTS §59 ("judgment in an action involving a party who is an officer, director, stockholder or member of a non-stock corporation [has no] preclusive effects on the corporation itself" except in limited circumstance (not present here)). The Debtors will be able to relitigate any issue, or adopt any position, in response to subsequent litigation, if any. *See Reliance Acceptance Corp.,* 235 B.R. at 558 (rejecting the debtor's claim that the estate was at risk; the debtor was not a party to the shareholder litigation and thus could not be bound by any finding in that action). The *Reliance* court found Section 27 of the RESTATEMENT (SECOND) OF JUDGMENTS[9] unsupportive of the debtor's argument of risk because the estate was not a party to the action giving rise to the judgment.

56.    Leaving aside the fact that a proof of claim was not filed and regardless of the amount of the claims of Darwin or the Putative Class, it is likely they will receive nothing from the Debtor in the bankruptcy case because the claims are subject to subordination under Bankruptcy Code §510(b). Unsecured creditors would have to be paid in full before there is any recovery to subordinated creditors. Hence, not only is collateral estoppel no basis to enjoin the Securities Litigation, but as a result of the absence of any economic impact on the Debtor's estate by virtue of the claims asserted in the Securities Litigation, collateral estoppel is irrelevant.

---

[9]    Section 27 provides the traditional rules on issue preclusion

> when an issue of fact or law is actually litigated and determined by a valid and final judgment, the determination is conclusive in a subsequent action between the parties, whether the same or a different claim.

E.    *Darwin and the Putative Class will suffer substantial harm if the stay is extended or an injunction is granted.*

57.    The extraordinary injunctive relief sought by the Debtor can be granted only if, on balancing the interests of the respective parties, the Court finds that the Debtor has shown that any actual harm it will suffer outweighs the very clear and substantial harm to Darwin and the Putative Class.  *See Continental Air Lines*, 61 B.R. at 771.  The Debtor has not, and cannot, assert that the Darwin and the Putative Class will not be injured by granting the relief it seeks.

58.    It is axiomatic that justice delayed is justice denied.  It is no surprise therefore, that "[t]he party seeking a stay bears the burden of justifying a delay tagged to another legal proceeding."  *Wedgeworth*, 706 F.2d at 545.

59.    As in many open-market securities class actions, much of the information relevant to the claims against the Non-Debtor Defendants in the Securities Litigation may be obtained only from the officers and directors of the Debtor and other third parties.  If the prosecution of the Securities Litigation is stayed for any significant length of time, much of this critical information and knowledge may well be lost.  Human recollection inevitably fades as time passes.  Similarly, pertinent documents currently in the possession of the Non-Debtor Defendants might be lost or discarded, even inadvertently.  Thus, imposing the requested stay may effectively deny Darwin and the Putative Class their day in court.  *See In re Continental Air Lines*, 61 B.R. at 782; *In re Lion Capital Group*, 44 B.R. 690, 703 (Bankr. S.D.N.Y. 1984).

60.    In addition, a significant delay in the prosecution of the Securities Litigation will likely make it more difficult to deliver the proceeds of any recovery to Darwin and the Putative Class.  Class members move, die, lose records and the like.  The inability to identify Class members or deliver any recovery to them is by itself a significant "hardship," effectively depriving them of their rights.

61.     The possible loss of crucial evidence unquestionably constitutes substantial harm. Darwin and the Putative Class will suffer the additional harm of a delayed trial and, consequently, a delayed recovery, if they are successful.   As set forth above, the Securities Litigation was only recently commenced and requires no participation by the Non-Debtor Defendants at this juncture and for months to come.  Given the obvious harm to the Darwin and the Putative Class, the Debtor cannot show that the unsupported speculation regarding any impact on the reorganization effort outweighs the very real harm to Darwin and the Putative Class.

F.      *Issuance of a preliminary injunction is adverse to the public interest.*

62.     The Debtor must set forth facts showing that the issuance of an injunction is not adverse to the public interest.  *In re Costa & Head Land Co.*, 68 B.R. 296, 303-04 (N.D. Ala. 1986).   This requires the balancing of the public interest in a successful bankruptcy reorganization with other competing societal interests.  *In re Fowler Floor & Wall Covering Co.*, 93 B.R. 55, 58 (Bankr. M.D. Pa. 1988).

> The words "public interest" are defined in *Black's Law Dictionary* as "something in which the public, the community at large, has some pecuniary interest, or some interest by which *their legal rights or liabilities are affected.*"

*Costa & Head*, 68 B.R. at 303 (emphasis in original).  Moreover:

> "It has been a cardinal principle of bankruptcy law from the beginning that it effects do not normally benefit those who have not themselves 'come into' the bankruptcy court with their liabilities *and* all their assets…. To violate this principle on the appealing facts of a particular case, where no specific necessity for doing so is set forth, is simply to invite a wholesale restructuring of the expectations of those involved in commercial transactions without any indication from Congress that such a profound change was intended."

*Robbins v. Chase Manhattan Bank*, 1994 U.S. District LEXIS 5100 at *19-*20 (W.D.Va. 1994), quoting *In re Venture Properties, Inc.*, 37 B.R. 175, 177 (Bankr. N.H. 1984) (emphasis in original).

63.    The Bankruptcy Code was never intended to be used as a shield behind which officers and directors of a debtor corporation or non-debtor affiliates could hide their violations of the federal securities laws. *See In re Chateaugay Corp.*, 76 B.R. 945, 948-49 (S.D.N.Y. 1987). The prompt resolution of civil suits involving allegations of securities law violations directed toward directors and officers of a public corporation by stockholders is in the public interest, more today than ever.

64.    The United States Supreme Court has long held that there is a "public interest" in the integrity of the securities markets. *Basic Inc. v. Levinson,* 485 U.S. 224, 230, 108 S.Ct. 978, 99 L.Ed. 2d 194, 207 (1988). This factor supports the denial of the preliminary injunction and the extension of the automatic stay requested by Delta. Indeed, it has been observed that class actions on behalf of investors of a debtor are "vigorously litigated" outside of the bankruptcy court. *See Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1093-95 (2d Cir. 1995) (holding that claims for fraud and negligence in connection with the purchase of securities can only be prosecuted by the investors, not by the bankruptcy trustee). *See also Teledyne Indus., Inc. v. Eon Corp.*, 401 F. Supp. 729, 734-36 (S.D.N.Y. 1975), *aff'd sub nom*, 546 F.2d 495 (2d Cir. 1976). Thus, under the applicable law, actions on behalf of investors, routinely go forward against non-debtors in the wake of a bankruptcy.

65.    Several now successful corporate reorganizations and liquidations coexisted with companion securities class actions against the respective debtor's officers, directors, accountants, and underwriters without any stay or injunction of the ongoing private actions, and without

undue inconvenience to, or burden on, the debtor.  *See, e.g., In re Equity Funding Corp. of America Sec. Lit.*, 438 F. Supp. 1303 (C.D. Cal. 1977); *In re King Resource Co. Sec. Lit.*, 420 F. Supp. 610 (D.C. Colo. 1976); *In re Penn Cent. Sec. Litig.*, 347 F. Supp. 1327 (E.D. Pa. 1972), *aff'd*, 494 F.2d 528 (3d Cir. 1974).   Some of these private actions have resulted in large recoveries for the defrauded shareholders (*e.g.*, Equity Funding - 962 million; U.S. Financial - $50 million; King Resource - $13 million).   In addition, in *In re American Continental Corp./Lincoln Savings & Loan Sec. Lit.*, MDL 834 (D. Ariz.), which involved a liquidating estate created by the Chapter 11 plan, the lead plaintiffs received over $275 million in recoverables and $3 billion in verdicts.   These cases are among the most successful shareholder recoveries achieved in securities class actions.   Securities litigation in *Washington Mutual, Inc.*, *Enron Corporation, WorldCom, Inc.*, *Lehman Brothers, Inc.*, and *New Century TRS Holdings, Inc.*, some of the largest and most complicated Chapter 11 bankruptcy proceedings in the history of American jurisprudence, continued despite the bankruptcy proceedings, some in this very Court. Those debtors filed and confirmed plans of reorganization or liquidation in the face of active securities litigation in which the debtors and their officers and directors participated and provided discovery.  Indeed, to enjoin the ongoing prosecution of the Securities Litigation would not only ignore these lessons of past experience, but would set a very unfortunate and dangerous precedent for the future.  *See New York Employees Ret. Sys. v. Ebbers (In re World Com, Inc.)*, 298 B.R. 308 (S.D.N.Y. 2003), where Judge Cote of the District Court permitted the securities litigation to proceed against non-debtor defendants therein notwithstanding the debtor's ongoing Chapter 11 proceeding.  *See also In re Northwest Airlines Corporation*, Case No. 05-17930 (ALG) (Bankr. S.D.N.Y.) *supra*, where although the Bankruptcy Court previously acknowledged that Northwest Airlines is "among the largest airlines in the United States and [is] currently

facing a multitude of problems that are endemic in the industry," Mem. of Op. and Order Denying Motion for Relief from Stay dated Jan. 12, 2006, at 4, quoted in Northwest Airlines' Reply Brief In Support of Debtors' Motion for An Order Pursuant to Section 105(a) and 362(a), at 4, Adv. Pro. No. 06-01219 (ALG), Document No. 9), the Court still denied Northwest's motion to extend the automatic stay and enjoin securities and ERISA litigation against non-debtor defendants therein in response to the same arguments raised by Debtors here. *See Northwest* Tr., at 64, line 25 to 69, line 11.

66.     Under Delta's theory, all securities actions against current and former officers and directors of a company in bankruptcy should be enjoined. *See* Exhibit D hereto, *Northwest* Tr., at 35, line 3-6; ¶51, *supra*. If such expansive protection for non-debtors was intended under the bankruptcy laws, Congress would have expressly provided such protection in the Code as it did in 11 U.S.C. §§1201 and 1301. However, no such protection is afforded non-debtors in a chapter 11 proceeding. Indeed, the Bankruptcy Code now prohibits individual officers and directors from discharging debts for violation of any state or federal securities laws. Bankruptcy Code §523(a)(19)(A)(i). Such a blanket injunction is inconsistent with maintaining the integrity of the securities markets and is adverse to the public interest. Thus, in addition to the procedural deficiencies and legal bases requiring denial of the Motion, public policy requires that Delta's motion be denied.

## CONCLUSION

Based upon the foregoing, Darwin respectfully requests that an Order be entered denying the Motion and granting such other and further relief as the Court deems just and proper.

Respectfully submitted,

**LOWENSTEIN SANDLER PC**

Dated:  May 7, 2006

By:  /s/ Michael S. Etkin
Michael S. Etkin, Esq. (ME-0570)
*Ira M. Levee, Esq. (IL-9958)*
65 Livingston Avenue
Roseland, New Jersey  07068
(973) 597-2500 (Telephone)
(973) 597-2481 (Facsimile)

*Bankruptcy Counsel for George Darwin*

**ROBBINS    GELLER    RUDMAN    &
DOWD LLP**
Trig Smith, Esq.
655 West Broadway, Suite 1900
San Diego, California  92101
(619) 231-1058 (Telephone)
(619) 231-7423 (Facsimile)

*Counsel for George Darwin*