## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Jointly Administered |
| DELTA PETROLEUM CORPORATION, | ) | |
| *et al.,*[1] | ) | Case No. 11-14006 (KJC) |
| | ) | |
| Debtors. | ) | **Response Deadline:  August 8, 2012 @ 4:00 p.m. ET** |
| | ) | **Hearing Date:  August 15, 2012 @ 1:00 p.m. ET** |

**MOTION OF MISSIANA, LLC, BENEDICT CORPORATION, AND L.W. WICKES AGENT CORPORATION FOR ORDER GRANTING RELIEF FROM THE AUTOMATIC STAY AND SUBSEQUENT DISCHARGE INJUNCTION TO ALLOW STATE COURT ACTION TO LIQUIDATE CLAIMS AGAINST DEBTORS AND THEIR INSURERS, IF ANY,  OR ALTERNATIVELY FOR ABSTENTION**

Missiana, LLC, Benedict Corporation, and L.W. Wickes Agent Corporation (collectively, "Movants"), by their undersigned counsel, pursuant to Sections 362 and 524 of Title 11 of the United States Code (the "Bankruptcy Code"), Rules 4001(a) and 9014 of the Federal Rules of Bankruptcy Procedure, and Local Bankruptcy Rule 4001-1, hereby move this Court for the entry of an Order in the form attached hereto, granting them relief from the automatic stay and subsequent discharge injunction[2] to permit the State Court Action in the 7th Judicial District Court for the Parish of Catahoula, State of Louisiana (the "State Court"), bearing Civil Action Number 24,055, Section "B" and entitled, "*M. J. Farms, Ltd. v. Exxon Mobil Corporation et al.*" (the "State Court Action") to proceed to liquidate Movants' claims against Delta Petroleum Corporation and Castle Exploration Company, Inc., and their insurers, if any, or alternatively for abstention. In support of their motion, the Movants respectfully state as follows:

---

[1] **The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: Delta** Petroleum Corporation (0803), DPCA LLC (0803), Delta Exploration Company, Inc. (9462), Delta Pipeline LLC, (0803), DLC, Inc. (3989), CEC, Inc. (3154), Castle Texas Production Limited Partnership (6054) and Amber Resources Company of Colorado (0506). The Debtors' headquarters are located at: 370 17th Street, Suite 4300, Denver, Colorado 80202.

[2] Because this Motion will be heard contemporaneously with the hearing on confirmation of the Debtors' Plan set for August 15, 2012, the Movants request both stay relief and relief from the discharge injunction to be effective shortly after the confirmation of the Debtors' Plan.

**JURISDICTION**

1.   The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334, Rule 9024 of the Federal Rules of Bankruptcy Procedure, and Rule 60(b)(6) of the Federal Rules of Civil Procedure.

**STATEMENT OF FACTS**

2.   On December 16, 2011, each of the debtors, except Castle Exploration Company, Inc. ("Castle") filed a voluntary petition for relief under Chapter 11 of Title 11, United States Code (the "Bankruptcy Code").   Castle filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code on January 6, 2012.   Collectively, Delta Petroleum Corporation ("Delta Petroleum") and Castle are referred to herein as the "Debtors." The Debtors filed their Joint Chapter 11 Plan of Reorganization on or about June 4, 2012 [Doc. No. 590].   The Debtors filed their Second Amended Joint Chapter 11 Plan of Reorganization on or about July 6, 2012 [Doc. No. 694].

3.   The Debtors are independent oil and gas companies.

4.   Missiana, LLC ("Missiana"), Benedict Corporation ("Benedict"), and L.W. Wickes Agent Corporation ("Wickes"), are co-owners of a mineral servitude on a tract of land in Catahoula Parish, Louisiana (more particularly described as covering all, or portions of, T5NR6E, Sections 5, 6, 7, 8, 9, 17, 18, 19, 20, 21, 28, 29, and 30 and referred to herein as the "Missiana Tract").

5.   The mineral servitude is owned 50% (or 12/24) by Missiana, 29.167% (7/24) by Benedict, and 20.833% (or 5/24) by Wickes.

6.   The joint servitude interest resulted from several land and ownership transactions that spanned decades.   Over the years, Missiana, Benedict, and Wickes entered into numerous leases with many different mineral rights lessees for the exploration and

production of minerals located on the Missiana Tract.

7.  Missiana, Benedict, and Wickes did not conduct operations on the Missiana Tract themselves. At various times the Movants, as Co-Lessors, executed oil, gas, and mineral leases covering tracts on the Missiana Tract to third parties, including the Debtors (the "Leases").

8.  Delta Petroleum and Castle were operators and/or mineral lessees by virtue of lease instruments from (and granted by) the Movants on a number of mineral leases on parts of the Missiana Tract.    Specifically,  Delta Petroleum and Castle were operators and/or mineral lessees of: Lease No. 105, Well No. 171659 located on Section 17 of the Missiana Tract; Lease No. 155, Well Nos. 204705 and 206244 located on Section 17 of the Missiana Tract; and Lease No. 169, Well No. 206265. Copies of the referenced Leases are attached hereto as Exhibit "A."   Also attached hereto as Exhibit "B," are permits demonstrating that Delta Petroleum and Castle were operators and/or mineral lessees of the Wells referenced herein.

9.  Delta Petroleum and Castle were obligated through these lease instruments in favor of the Movants, and/or through the operating agreements under the Leases through which the Debtors acted as operators, and/or by operation of Louisiana law, to conduct themselves according to law and an underlying standard of reasonableness in carrying out mineral operations on the leased premises.

10.  The Movants have been named as defendants in an action instituted by M. J. Farms, Ltd. ("M. J. Farms") in above described State Court Action.

11.  In its Petition (as amended) filed in the State Court Action on or about April 26, 2006, M. J. Farms alleges that it is the owner of 42,000 acres of immovable property located in Catahoula and Avoyelles Parish, Louisiana.   See Petition, First Amended Petition and Second Amended Petition attached hereto *in globo* as Exhibit "C."  M. J.

Farms alleges that it purchased this immovable property by deeds recorded November 1, 2005 in Catahoula Parish and January 12, 2006 in Avoyelles Parish, Louisiana.    M. J. Farms further alleges that different parties have owned three different mineral servitudes affecting differing geographic portions of such acreage. The acreage includes, but is not limited to, at least part of the Missiana Tract.

12.  M. J. Farms has alleged that historic oil and gas exploration and production operations conducted on the Missiana Tract have caused damage and contamination to the surface, subsurface, underground, and to the sources of water on or beneath the property, and has asserted numerous causes of action against the Movants and others for damages and remediation.

13.  The Movants have answered M. J. Farm's allegations and have denied any and all fault, wrong-doing, responsibility or liability for the allegations asserted.  The Movants have vigorously defended against these allegations, and intend to continue to do so.

14.  Missiana, Benedict, and Wickes identified certain mineral lessees of and operators upon the "Missiana Tract" through contractual transactions with or involving Missiana, Benedict, and Wickes, and third parties.   In accordance with the applicable contracts and legal relationships (and the obligations inherent therein), Missiana, Benedict, and Wickes called upon certain of these mineral lessees (and their insurers, lessees, operators and/or assignees) to protect, defend, indemnify, and hold harmless Missiana, Benedict, and Wickes from the allegations of the State Court Action.   Those communications resulted in only limited success.

15.  Therefore, Missiana filed a Third Party Demand in the State Court Action against numerous similarly situated parties, including Debtors, on or about June 22, 2009. Thereafter, Benedict and Wickes intervened in the third party demand of Missiana. A First Amended and Supplemental Third Party Petition was filed by the Movants on or about

November 16, 2011.

16.  Should it be determined through the State Court Action that there exists any contamination or damage on, under, adjacent to, or to the sources of water on or beneath the area covered by the Leases for which the Movants have any responsibility to M. J. Farms (which is denied), the Movants aver that such damage was caused by the act or omission of the third party defendants including but not limited to the Debtors, Delta Petroleum and Castle, and/or their lessees, assigns, contractors, sub-contractors, and/or respective successors-in-interests.  Should any such contamination or damage exist (which is denied), the Movants aver in addition that such is due to the contractual and/or legal breaches of third parties including but not limited to the Debtors, Delta Petroleum and Castle, in acts of commission or omission in carrying out mineral operations on the Leased Premises.

**STATUS OF STATE COURT ACTION**

17.     The State Court Action was stayed for a period of approximately six months, and a special master was appointed to preside over settlement negotiations.  A settlement was not reached and the stay of the State Court Action expired in March of 2012.

18.     The State Court Action is currently in the discovery phase.  There is a dispositive pre-trial motion hearing date currently set for May 22, 23, and 24, 2013.  There is a pre-trial status conference currently set for August 22 and 23, 2013. The State Court Action is currently set for a jury trial to commence October 1, 2013.

19.     On or about June 8, 2012, the Movants filed a Motion for Leave to file Second Amended and Supplemental Third Party Petition in the State Court Action, which was granted by Order entered in the State Court Action on June 20, 2012. The Second Amended and Supplemental Third Party Petition restates the previously filed original Third Party Petition and First Amended and Supplemental Third Party Petition, but adds two additional

third party defendants, unrelated to the Debtors, and new allegations related solely to one of the new third party defendants, again, unrelated to the Debtors. A copy of the Second Amended and Supplemental Third Party Petition is attached hereto as Exhibit "D." The Debtors' insurers, if any, have not yet been identified and/or named as third party defendants in the State Court Action.

20.    On or about June 8, 2012, M. J. Farms moved for leave to file Plaintiffs' Amended and Restated Petition, which *inter alia*, added seven insurance companies as defendants. A copy of Plaintiffs' Amended and Restated Petition is attached hereto as Exhibit "E." That motion was granted by order entered June 20, 2012.

### BANKRUPTCY CLAIMS ASSERTED BY MOVANTS

21.    On March 20, 2012, each of the Movants filed a Proof of Claim in Delta Petroleum's case and in Castle's case through their claims agent, Epiq Systems, in an unknown and contingent amount regarding claims asserted in the State Court Action.   See Delta Petroleum, Case No. 11-14006: Claim Number 190 (Wickes' Claim), Claim Number 191 (Benedict's Claim), and Claim Number 194 (Missiana's Claim); and Castle, Case No. 12-10120, Claim Number 189 (Wickes' Claim), Claim Number 192 (Benedict's Claim), and Claim Number 193 (Missiana's Claim).

### ARGUMENT

### I. THE AUTOMATIC STAY AND SUBSEQUENT DISCHARGE INJUNCTION SHOULD BE MODIFIED TO PERMIT THE LIQUIDATION OF MOVANTS' CLAIMS INTHE STATE COURT ACTION

#### A. <u>Relief  from the Stay for "Cause" is Appropriate</u>

22.    Movants respectfully request that the Court enter an Order modifying the automatic stay imposed by section 362(a), for "cause" pursuant to section 362(d) of the Bankruptcy code, which provides, in part:

(d)     On request of a party in interest and after notice and a hearing the court shall grant

relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying or conditioning such stay—

(1)     for cause, including the lack of adequate protection of an interest in property of such party in interest[.]

23.     Movants submit that "cause" exists to modify the automatic stay to allow the contingent claims of Movants against the Debtors and their insurers, if appropriate, to proceed to the liquidation in the State Court Action. 11 U.S.C. § 362(d)(1). "Cause" is not defined in the Bankruptcy Code; it must be "determined on a case-by-case basis." *In re Rexene Products Company,* 141 B.R. 574, 576 (Bankr. D.Del. 1992), citing *Intl Bus. Machines v. Fernstrom Storage & Van Co.,* 938 F.2d 731, 735 (7th Cir. 1991). In *Rexene Products,* this Court stated as follows:

The legislative history indicates that cause may be established by a single factor such as "a desire to permit an action to proceed . . in another tribunal," or "lack of any connection with or interference with the pending bankruptcy case." H.R.Rep. No. 95-595, 95th Cong., 1st Sess., 343-344 (1977) U.S. Code Cong. & Admin. News pp. 5787, 6300. *See also In re Drexel Burnham Lambert Group, Inc.,* 113 B.R. 830, 838 n.8 (Bankr. S.D.N.Y. 1990) (citing various findings of § 362(d)(1) "cause" to permit State Court Action in another forum such as liquidation of a personal injury, arbitration or specialized jurisdiction claim). The legislative history to section 362(d)(1) emphasizes the section's applicability to proceedings in another tribunal. "It will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from any duties that may be handled elsewhere." H.R.Rep. No. 595, 95th Cong., 1st Sess., 341 (1977). This theme is echoed in the equitable balancing test most courts apply to determine if cause exists to lift the stay to allow pending State Court Action to proceed or continue in another forum.

141R. at 576 (citations omitted).

24.     In *Rexene Products,* the Court held that the following test should be used to decide whether relief from the stay should be granted:

a)   Whether any great prejudice to either the bankruptcy estate or the debtor will result from continuation of the civil suit;

b)   whether the hardship to the [non-bankrupt party] by maintenance of the stay considerably outweighs the hardship of the debtor; and

c)   whether the creditor has a probability of prevailing on the merits.

*Rexene Products,* 141 B.R. at 576 (citations omitted). The movant on a relief from stay motion has the initial burden of establishing a prima facie case. *Id.* at 577; *In re Laguna Associates Limited Partnership,* 147 B.R. 709, 714-15 (ED. Mich. 1992). If the movant does so, then the burden shifts to the debtor who has the burden of ultimate persuasion. *Id.*The *Rexene Products* test has been repeatedly applied by this Court. *See e.g., In re Continental Airlines, Inc.,* 152 B.R. 420, 424 (D.Del. 1993); *In re SCO Group, Inc.,* 395 B.R. 852, 857 (Bankr. D.DeI. 2007); *In re Levitz Furniture Inc.,* 267 B.R. 516, 523 (Bankr. D.Del. 2000); *In re Pursuit Athletic Footware, Inc.,* 193 B.R. 713, 718 (Bankr. D.DeI. 1996). In each of these cases, relief from the stay was granted.

25.      In the present case, the first prong of the *Rexene Products* test is clearly met. No great prejudice to the Debtors will result from the lifting of the stay. The State Court Action will allow the liquidation of the Movants' claims against the Debtors, if any liability is found on behalf of the Movants.  As discussed herein, the Movants are defendants in the State Court Action and are vigorously defending the State Court Action. However, because the Movants did not conduct exploration and production activities on the Missiana Tract, the Movants have filed third party demands against those who did conduct exploration and production activities on the Missiana Tract.  In the event that it should be determined through the State Court Action that there exists any contamination or damage on, under, adjacent to, or to the sources of water on or beneath the area covered by the Leases for

which the Movants have any responsibility to M. J. Farms, Movants' claims for indemnification against the third party defendants in the State Court Action will determine whether the Debtors have any responsibility or liability.  Should any  liability on behalf of the Debtors be determined, any claims of the Movants will be enforced through this Court in accordance with the Debtors' confirmed plan.

26.    The continuation of the State Court Action will not distract the Debtors from their reorganization efforts, as the Debtors' Plan will likely be confirmed at the upcoming confirmation hearing scheduled for August 15th. Consequently, the active involvement of counsel and representatives involved in the Debtors' reorganization efforts in the State Court Action would be unnecessary.  Prior to the filing of the bankruptcy proceeding, the Debtors participated in settlement meetings regarding the State Court Action through in-house counsel. In light of the foregoing, no great prejudice to the Debtors will result from lifting the stay.

27.    The second prong of the *Rexene Products* test is likewise clearly met, as the hardship to the Movants clearly outweighs any hardship to the Debtors that might result from modification of the stay.  The State Court Action will not currently require the involvement of witnesses which might otherwise interfere with the plan confirmation process, and hearing on plan confirmation scheduled for August 15th. Given the current schedule established in the State Court Action and the schedule established for plan confirmation, any involvement by the Debtors' representatives in the State Court Action would likely occur post-confirmation.

28.    Further, in the event that testing shows that there exists any contamination or damage on, under, adjacent to, or to the sources of water on or beneath the area covered by the Leases upon which the Debtors operated, unless the stay relief requested herein is granted, the Movants will be severely prejudiced by being unable to establish the Debtors'

liability for any such contamination or damage.  Of course, the Debtors may decide, in the

exercise of their business judgment, given the proposed distributions to unsecured creditors,

that their participation in defense of the State Court Action is unwarranted.

29.    Also, there is no great hardship to the Debtors in requiring them to

participate in their defense. Courts have generally not been persuaded by a debtor's

arguments concerning the cost of defense:

> The courts have not, however, ascribed much significance to the fact that the debtor
> will be required to participate in their defense, especially when the debtor's insurer
> is obligated to provide counsel. See for example, *Matter of Holtkamp,* [669 F.2d 505
> (7th Cir. 1982)]. This position has been sustained despite the fact the debtor was
> uninsured and was required to assume the costs of its own defense. *In re Terry,* [12
> B.R. 578 (Bankr.E.D.Wis. 1981)], *In re McGraw,* [18 B.R. 140 (Bankr.W.D. Wis.
> 1982)].

*Id.* at 567. The Court of Appeals for the Third Circuit concurs with this position:

> The Court of Appeals for the Third Circuit has declared that State Court Action
> expenses do not constitute an injury sufficient to justify the enjoining of State Court
> Action against the Debtor. *In re Davis,* 691 F.2d 176, 178 (3d Cir. 1982), quoting
> *Younger v. Harris,* 401 U.S. 37, 46 (1971).

*Matter of Nicholas, Inc. (Nicholas v. National Labor Relations Board),* 55 B.R. 212, 217

(Bankr. N.J. 1985). Here, the Debtors' insurers have not yet been named as third party

defendants, but Movants seek relief from the stay, *inter alia,* to determine who the Debtors'

insurers were for the applicable period of time, and join the Debtors' insurers in the State

Court Action if appropriate.   Accordingly, the hardship to the Movants in denying the motion

to modify the stay considerably outweighs any hardship to the Debtors in continuing the

State Court Action in Louisiana.

30.    Finally, the third prong of the *Rexene Products* test is also clearly met. This

Court has previously held that the required showing of probability of success on the merits is

"very slight." *See Rexene Products,* 141 B.R. at 578. Here, the Movants only seek to recover from the Debtors and/or their insurers in the event that the Movants are found to have any responsibility to M. J. Farms for any contamination or damage on, under, adjacent to, or to the sources of water on or beneath the area covered by the Leases upon which the Debtors operated.   In such event, the Movants will look to those who actually operated on the Leases, and/or their insurers, for indemnity as the Movants themselves never conducted operations on the Leases.   Given that the Debtors clearly operated on the Leases in question, during the period as to which M. J. Farms alleges damage and contamination occurred, Movants have more than a reasonable chance of prevailing on the merits against the Debtors if the Movants are found responsible for any such damage or contamination.

31.   Accordingly, the State Court Action clearly presents meritorious issues for determination. *See, e.g., Fernstrom,* 938 F.2d at 736 (ordering automatic stay lifted where the underlying action was not frivolous).

32.   Movants respectfully submit that, in view of the foregoing, the automatic stay should be modified to permit the State Court Action to proceed against the Debtors to liquidate their claims against the Debtors and their insurers, if appropriate. The Debtors will not be prejudiced by continuing the State Court Action, the hardship to Movants by maintenance of the automatic stay greatly outweighs the hardship to the Debtors, and Movants have more than a reasonable chance of prevailing on the merits.  Accordingly, the Movants request that the automatic stay be lifted on the earlier of the Effective Date of the Debtors' confirmed plan, or September 3, 2012 (whichever is sooner), to allow the Movants to liquidate their Claims against the Debtors, and their insurers, if applicable, in the State Court Action, with any such Claims against the Debtors to be enforced in accordance with the Debtors' confirmed plan of reorganization.

**B.**    <u>Relief from the Discharge Injunction is likewise appropriate</u>.

33.    For the reasons addressed hereinabove, the Movants also seek relief from the anticipated discharge injunction pursuant to Bankruptcy Code Sections 105 and 524, given that this Motion will be heard contemporaneously with the hearing on confirmation of the Debtors' plan, and the plan's Effective Date will likely occur soon thereafter, thereby invoking the discharge injunction shortly after any stay relief is granted herein. Accordingly, the Movants request relief from the discharge injunction upon the Effective Date of the Debtors' confirmed plan, to allow the Movants to liquidate their claims against the Debtors, and their insurers, if applicable, in the State Court Action, with any such Claims against the Debtors to be enforced in accordance with the Debtors' confirmed plan of reorganization.

## II. ALTERNATIVELY, THE COURT SHOULD ABSTAIN FROM HEARING THE CLAIMS PENDING IN THE STATE COURT ACTION IN DEFERENCE TO THE STATE COURT

34.    Alternatively, the Court should abstain from hearing issues related to the Movants pending Claims herein, in deference to the State Court Action under 28 U.S.C. § 1334(c)(2), or in the alternative, under the principles of permissive abstention of 28 U.S.C. § 1334(c)(1).

**A.**    <u>Mandatory Abstention</u>

35.    Pursuant to 28 U.S.C. § 1334(c)(2), the court must abstain if:  (1) a party files a timely motion to abstain; (2) the proceeding is based on state law; (3) the proceeding is non-core, and only related to a case under Title 11; (4) the proceeding lacks federal jurisdiction absent the bankruptcy; (5) an action has been commenced in a state forum of appropriate jurisdiction; and (6) the state court is capable of timely adjudicating the claims.

*Lindsey v. O'Brien, Tanski, Tanzer & Young Health Care Providers (In re Dow Corning Corporation)*, 86 F.3d 482 (6th Cir. 1996); *Gober v. Terra Corporation (Matter of Gober)*, 100 F.3d 1195 (5th Cir. 1996); *TTS, Inc. v. Stackfleth (Matter of Total Technical Services, Inc.)*, 142 B.R. 96 (Bankr. D. Del. 1992).

36.    The first two requirements are satisfied herein. This alternative motion for abstention is timely.  Further, the claims involved in the State Court Action involve only state law issues.

37.    The third requirement is also satisfied.  The claims asserted by Movants in the State Court Action are non-core, and are merely "related to" a case under Title 11, but do not arise under Title 11 or arise in a case under Title 11.  As this Court explained in *NEC Holdings Corp., et al v. Linde, LLC, et al.* (*In re NEC Holdings Corp.*), 2011 Bankr. LEXIS 1653 (Bankr. Del. 2011):

> To determine whether a claim is "core," the Court will first look at the non-exhaustive list of core proceedings in *28 U.S.C. § 157. In re Exide Technologies, 544 F.3d 196, 206 (3d Cir. 2008)*. The Court then, on a claim-by-claim basis, conducts a "two-step test, according to which a claim will be deemed core if (1) it invokes a substantive right provided by title 11 or (2) if it is a proceeding, that by its nature, could arise only in the context of a bankruptcy case." *Id.* (internal quotation marks omitted).

*Id.* at *2-3.  Applying this test in *NEC Holdings,* this Court determined that the debtors' claims seeking cost recovery and contribution, as well as declaratory relief, from Linde relating to environmental liabilities on the Debtors' property were non-core.  Here, the claims asserted by Movants against the Debtors in the State Court Action are also clearly non-core, as they do not involve substantive rights created by federal bankruptcy law and could exist outside of bankruptcy, and did exist prior to the filing of the Debtors' cases.

38.    The fourth element for abstention is also satisfied.  Absent the bankruptcy of the Debtors, such an action would not be entitled to federal jurisdiction.  The claims involve a Louisiana plaintiff that alleges its property was contaminated and damaged in Louisiana. The State Court Action also involves twelve defendants, and sixty third party defendants, only four of whom are bankruptcy debtors.[3] The State Court Action is the appropriate jurisdiction for determination of the parties' rights.

39.    The fifth and sixth elements are also satisfied.  The State Court Action has been pending in the Louisiana State Court for five years. The Movants' third party demands against the Debtors (and numerous other third party defendants) have been pending in the Louisiana State Court for three years.  Further, trial in the State Court Action is currently scheduled in October of 2013.

40.    All six of the requirements for mandatory abstention have been satisfied. Therefore, this Court should abstain from hearing the claims which are pending in the State Court Action under 28 U.S.C. § 1334(c)(2), and allow those claims to be determined and liquidated by the State Court. The Debtors will not be prejudiced by liquidation of the claims in the State Court Action, as the claims against the Debtors, if any, will be enforced in accordance with the Debtors' confirmed plan.

### B.    Permissive Abstention

41.    Should the Court determine that this matter is a core proceeding, the Court should still exercise discretion and abstain under 28 U.S.C. § 1334(c)(1).  Section 1334(c).

---

[3] In addition to the Debtors, Delta Petroleum and Castle, unrelated debtors, TriDimension Energy, L.P. and Axis Onshore, LP, debtors in Case No. 10-33565 pending in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division, are also third party defendants.  Relief from the stay was granted in the bankruptcy proceedings of , TriDimension Energy, L.P. and Axis Onshore, LP, at the request of plaintiff, M. J. Farms.  The debtors' amended plan of liquidation was confirmed in Case No. 10-33565 on or about May 6, 2011.

Permissive abstention allows the bankruptcy court to abstain from hearing a core matter if the interests of justice, comity or respect for state law so require. 28 U.S.C. § 1334 (c)(1).

42.     The Court has discretion under 28 U.S.C. § 1334(c)(1) to abstain from hearing the Claims in the interest of justice, comity with state courts and respect for state law. *See* 28 U.S.C. § 1334(c)(1); *Trans World Airlines, Inc. v. Karabu Corp.*, 196 B.R. 711, 715 (Bankr. D. Del. 1996) (granting motion for permissive abstention); *In re Total Technical Services, Inc.*, 142 B.R. 96, 100-01 (Bankr. D. Del. 1992) (same).

43.     If the Court determines that abstention is not mandatory, it is appropriate for the Court to exercise its discretion to abstain from hearing the Claims, and allow the determination and liquidation of such Claims in the State Court Action under 28 U.S.C. § 1334(c)(1).

44.     Even in situations where mandatory abstention does not apply, the satisfaction of most of the requirements for mandatory abstention strongly suggests that discretionary abstention is proper. *See National Union Fire Insurance Co. v. Titan Energy, Inc. (In re Titan Energy, Inc.)*, 837 F.2d 325, 333 n.14 (8th Cir. 1988); *Citicorp Savings of Illinois v. Chapman (In re Chapman)*, 132 B.R. 153, 157 (Bankr. N.D. Ill. 1991); *In re Engra, Inc.*, 86 B.R. 890, 894 (Bankr. S.D. Tex. 1988); *Marcus Dairy, Inc. v. Belford (In re Naugatuck Dairy Ice Cream, Co.)*, 106 B.R. 24, 29 n.5 (Bankr. D. Conn. 1989).

45.     The District Court for the District of Delaware has determined that it should consider the following factors when deciding whether to exercise its discretion to abstain under 28 U.S.C. § 1334(c)(1):

1.     The effect or lack thereof on the efficient administration of the estate if the court abstains;

2.     The extent to which state law issues predominate over bankruptcy issues;

3.      The difficulty or unsettled nature of the applicable state law;

4.      The presence of a related proceeding commenced in state court or other non-bankruptcy court;

5.      The jurisdictional basis, if any, other than 28 U.S.C. § 1334;

6.      The degree of relatedness or remoteness of the proceeding to the main bankruptcy case;

7.      The substance rather than the form of an asserted "core" proceeding;

8.      The feasibility of severing state claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;

9.      The burden on the court's docket;

10.     The likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;

11.     The existence of a right to a jury trial; and

12.     The presence in the proceeding of nondebtor parties.

*See Indian River Homes, Inc.*, 1993 U.S. Dist. LEXIS 2521 n. *7-8 (citing *In re Total Technical Services, Inc.*, 142 B.R. 96 at 100-01 (Bankr. D. Del. 1992). Furthermore, when most of the factors requiring mandatory abstention have been met, careful consideration should be given whether the court should invoke its discretion and abstain under 28 U.S.C. § 1334(c)(1). *Milford Group, Inc. v. Northeastern Bank of Pennsylvania (In re Milford Group, Inc.)*, 164 B.R. 892, 897 (Bankr. M.D. Pa. 1993); *U.I.U. Health and Welfare Fund v. Levit (In re Futura Industries, Inc.)*, 69 B. R. 831, 834 (Bankr. E.D. Pa. 1987).

46.     Even if the Court finds that the Movants cannot meet all of the factors for mandatory abstention, the factors listed above warrant permissive abstention to allow the State Court Action to adjudicate the parties' rights.  The issue in the State Court Action involves the construction and application of Louisiana law and Louisiana contracts (mineral leases) – purely state law issues.  The only connection of this issue to this Bankruptcy Court

is the Debtors' pending Chapter 11 cases. As demonstrated below, consideration of these factors leads to the conclusion that permissive abstention is warranted here.

47.    The application of the factors for permissive abstention identified hereinabove also support permissive abstention as follows:

1.    Abstention will not impede the efficient administration of the Debtors' estates, as liquidation of the Claims will occur in the forum that is most familiar with the contingent indemnification claims asserted against the Debtors therein.

2.    State law issues predominate over bankruptcy issues, as the Claims asserted by the Movants in the State Court Action arise under Louisiana law and contracts.

3.    The State Court Action involves complex contamination damage claims asserted against the Movants by the landowner, and complex indemnification claims against sixty third party defendants, the vast majority of whom are non-debtors, who actually conducted exploration and drilling activities on the plaintiff's land. Furthermore, certain third party defendants have demanded a trial by jury, and a jury trial has been set in the State Court Action;

4.    The State Court Action was commenced in the State Court nearly 4 ½ years prior to the Debtors' bankruptcy proceedings, and the Debtors were named as third party defendants nearly 1½ years prior to the Debtors' bankruptcy proceedings. The pendency of the State Court Action makes abstention appropriate in the interests of comity with state courts, respect for state law, and deference to the expertise of state courts in matters involving state law;

5.    There is no jurisdictional basis other than 28 U.S.C. § 1334;

6.    As discussed above, the State Court Action is remote from the main bankruptcy case;

7.    As discussed hereinabove, the claims asserted in the State Court Action are not "core" proceedings;

8.    There are no core matters to sever herein, but the Movants seek this Court to allow the liquidation of their claims against the Debtors, if any, with enforcement of such claims left to the bankruptcy court after such claims are liquidated.

9.      The determination of the Claims in the State Court Action is in the interest of judicial economy and will ease burden on this Court's docket. Conducting litigation on the issues involved in the State Court Action in this Court would be time consuming, expensive, and duplicative of the proceedings in the State Court Action, resulting in the potential for inconsistent findings and judgments;

10.     This factor is inapplicable in this case, as there is no case or proceeding commenced in bankruptcy court that may involve forum shopping by one of the parties;

11.     Certain third party defendants have requested a jury trial and a jury trial has been set;

12.     The presence of nondebtor parties in the State Court Action is significant. There are sixty third party defendants, only four of whom are currently or have been debtors.

48.     Consideration of the cited factors overwhelmingly favors discretionary abstention pursuant to 28 U.S.C. § 1334(c)(1). No prior request for the relief sought herein has been made to this or any other court.

## CONCLUSION

**WHEREFORE,** Movants respectfully request that the Court enter an Order in the form attached hereto:

**1.**      Modifying the automatic stay on the earlier of the Effective Date of the Debtors' confirmed plan, or September 3, 2012 (whichever is sooner), to allow the Movants to liquidate their Claims against the Debtors, Delta Petroleum and Castle, and their insurers, if applicable, in the State Court Action, with any such Claims against the Debtors to be enforced in accordance with the Debtors' confirmed plan of reorganization;

**2.**      Modifying the discharge injunction upon the Effective Date of the Debtors' confirmed plan, to allow the Movants to liquidate their

claims against the Debtors, and their insurers, if applicable, in the State Court Action, with any such Claims against the Debtors to be enforced in accordance with the Debtors' confirmed plan of reorganization;

**3.**      Or alternatively, for abstention from hearing the issues and claims pending in the State Court Action; and

**4.**      Granting Movants such other and further relief as the Court deems just and appropriate.

Dated: July 23, 2012            Respectfully submitted,

WERB & SULLIVAN

/s/ Brian A. Sullivan
Brian A. Sullivan (No. 2098)
300 Delaware Avenue, 13th Floor
P.O. Box 25046
Wilmington, DE 19899
Telephone: (302) 652-1100
Facsimile: (302) 652-1111
bsullivan@werbsullivan.com

-and-

Lisa Merz Hedrick
Adams and Reese LLP
One Shell Square
701 Poydras Street
New Orleans, LA 70139
Main: (504) 581-3234
Main Fax: (504) 566-0210
Direct: (504) 585-0307
E-Fax: (504) 553-9762
lisa.hedrick@arlaw.com

**Attorneys for Missiana, LLC, Benedict Corporation, and L.W. Wickes Agent Corporation**